IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | )   1:06cr9(JCC) |
| SABRI BENKAHLA, | ) |
| | ) |
| Defendant. | ) |

### **M E M O R A N D U M   O P I N I O N**

Defendant, Sabri Benkahla, stands before this Court having been convicted by a jury of two counts of making false declarations before a grand jury in violation of 18 U.S.C. § 1623; one count of obstruction of justice in violation of 18 U.S.C. § 1503; and one count of making false statements and concealment in violation of 18 U.S.C. § 1001.  Defendant has filed a motion for judgment of acquittal pursuant to Rule 29, and a motion for a new trial.  These motions are currently before the Court.

### **I.  Background**

On August 26, 2004, Defendant testified before a federal grand jury regarding his possible participation in a jihad training camp and use of automatic weapons and rocket propelled grenades ("RPGs").[1]  Defendant's testimony centered around a trip to Pakistan and possibly Afghanistan during the

---

[1] Pursuant to 18 U.S.C. § 6003, Judge Hilton entered an Order on April 7, 2004 compelling Defendant's testimony in the grand jury investigation and granting him use immunity.

-1-

summer of 1999, as well as e-mail correspondence referring to the trip.  Defendant testified that during his 1999 trip he did not participate in any training relevant to combat, witness any training relevant to violent jihad, witness any training relevant to combat, handle a firearm or an explosive device, discharge a firearm or an explosive device, or witness anyone else discharge a firearm or an explosive device.  During the same grand jury appearance, Defendant also testified that he had never fired an AK-47 or an RPG.  The Government questioned Defendant about two e-mails he had sent referring to "studying in Afghan" and traveling to a "place far, far away," which was "top secret info."  Defendant testified that these e-mails did not refer to jihad training in Afghanistan.  The Government also questioned Defendant about a third e-mail in which Defendant referred to an individual named Haroon.  Defendant testified that he could not identify Haroon or the recipient of the e-mail.

On November 16, 2004, Defendant testified before the grand jury for a second time.  During this appearance, Defendant testified that he saw no one other than Pakistani Army soldiers carrying firearms during his trip in the summer of 1999, that he had never fired an AK-47 or an automatic weapon of any kind, and that he had never fired an RPG.  Because Defendant first traveled from the United States to Great Britain and then purchased a ticket to Pakistan, the Government questioned Defendant about his

reasons for doing so.  Defendant testified that he was not sure whether he would go to Pakistan until he arrived in London and that he decided to make the trip after meeting, for the first time, an individual in Great Britain who agreed to show him around Pakistan.

On April 22, 2004 and July 7, 2004, Defendant made statements to an agent of the Federal Bureau of Investigation ("FBI") conducting an investigation into jihad training camps under the control of terrorists espousing violence against the United States.  During this interview, Defendant stated to the FBI agent that he did not know certain details about specific persons and his interactions with those persons (*i.e.*, the person's last name, whether he had spoken with the person, whether he had met the person, whether jihad had been discussed).  Defendant also told the FBI agent that he had never fired an AK-47 or an RPG or participated in jihad training.

On February 5, 2007, a jury convicted Defendant on all counts: false declarations to the grand jury (Counts I and II); obstruction of justice (Count III); and false statements to an FBI Agent (Count IV).  After this conviction, Defendant filed a motion for judgment of acquittal and a motion for new trial.  These motions are currently before the Court.

## II.   Standard of Review

A.   Motion for Judgment of Acquittal

The question raised by a motion for a judgment of acquittal is whether "as a matter of law the government's evidence is insufficient to establish factual guilt on the charges in the indictment." *United States v. Alvarez,* 351 F.3d 126, 129 (4th Cir. 2003) (quoting *Smalis v. Pennsylvania,* 476 U.S. 140, 144 (1986)).  In reviewing a motion for judgment of acquittal, the court must consider the evidence and "all reasonable inferences that can be drawn from it in the light most favorable to the government, and then determine whether any rational finder of fact could have found the essential elements of the crimes charged beyond a reasonable doubt." *United States v. Childress,* 26 F.3d 498, 501 (4th Cir. 1994); *accord Bonds v. Beale,* 145 F. Supp. 2d 708, 720 (E.D. Va. 2001).

B.   Motion for New Trial

Rule 33 of the Federal Rules of Criminal Procedure grants the trial court discretion to "vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33.  According to the Fourth Circuit, "Rule 33 confers broad discretion on a district court." *United States v. Prescott,* 221 F.3d 686, 688 (4th Cir. 2000).  Furthermore, "the interest of justice is the touchstone for consideration" under

Rule 33. *United States v. Mitchell,* 602 F.2d 636, 639 (4th Cir. 1979). A leading treatise instructs that "[a]ny error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial." Wright & Miller, Federal Practice & Procedure § 556 (3d ed. 2004).

### III. Analysis

A. Whether Defendant's Conviction Is Based Upon An Uncorrborated Extrajudicial Admission

Defendant argues that he is entitled to a judgment of acquittal on the grounds that his conviction was based solely on an uncorroborated extrajudicial admission. Specifically, Defendant argues that the testimony of Government witness Allen Santora–-that Defendant told Santora that he fired an AK-47 and an RPG while in Pakistan--was entirely uncorroborated, and thus, his conviction on Count 2 and cannot be sustained.[2] For the reasons that follow, the Court finds that Defendant's uncorroborated admission was the basis for his conviction on Count 2, and will grant Defendant's motion for judgment of acquittal as to that count.

---

[2] Defendant was convicted of all four counts by a jury using a twenty-one question special verdict form. Questions 1 and 2 refer to Count 1 of the indictment, questions 3-7 refer to Count 2, questions 8-14 refer to Count 3, and questions 15-21 refer to Count 4. One affirmative answer is sufficient to require a guilty verdict on the respective count. In the event Defendant's argument is accepted, an acquittal would be required only with respect to Count 2, as the jury still found sufficiently against Defendant to require a conviction on Counts 1, 3, and 4.

The administration of criminal justice in federal courts requires that a criminal conviction must rest upon firmer ground than an uncorroborated admission of the accused. *See, e.g., Wong Sun v. United States,* 371 U.S. 471 (1963). In *Smith v. United States*, the Supreme Court found this requirement rooted in "a long history of judicial experience with confessions and in the realization that sound law enforcement requires police investigations which extend beyond the words of the accused." 348 U.S. 147, 153 (1954). The rationale behind the requirement was expounded upon in *Opper v. United States,* where the Court stated:

> In our country the doubt persists that the zeal of the agencies of prosecution to protect the peace, the self-interest of the accomplice, the maliciousness of an enemy or the aberration or weakness of the accused under the strain of suspicion may tinge or warp the facts of the confession. Admissions, retold at trial, are much like hearsay, that is, statements not made at the pending trial. They had neither the compulsion of the oath nor the test of cross-examination.

348 U.S. 84, 89-90 (1954). However, while "corroboration is necessary for all elements of the offense established by admissions alone," extrinsic proof which "merely fortifies the truth of the confession" is sufficient. *Smith*, 348 U.S. at 156. In addition, the corroborating evidence may be circumstantial evidence rather than direct. *United States v. Matthews*, 429 F.2d

497 (9th Cir. 1970); *United States v. Clark*, 57 F.3d 973, 976 (10th Cir. 1005).

      Rather than offer independent evidence of Defendant's handling an AK-47 or RPG, the Government merely re-hashes nearly every piece of evidence introduced at trial that Defendant traveled to Pakistan and attended a jihad training camp.[3] The Government asks this Court to summarily conclude that Defendant's attendance at a training camp sufficiently corroborates his extrajudicial admission that he also fired an AK-47 and an RPG. However, before the Court accepts the Government's reasoning, a more thorough review of the record must occur. Specifically, the Court must review the evidence supporting the contention that people who attend Lashkar-e-Taiba training camps, such as Defendant, also fire AK-47s and RPGs. The reason for the inquiry is simple: for evidence of Defendant's presence at a training camp to corroborate the testimony that Defendant fired an AK-47

---

[3] In support of this fact, the Government reiterates the following evidence admitted at trial: his overseas travel, especially to Pakistan and more specifically, the town of Peshawar; Kwon's testimony that Defendant admitted he attended a jihad training camp; Garbieh's testimony that he went to "visit the brothers," a reference to refer to the mujahideen; an email by Defendant that he was planning to go England, Ireland, and somewhere too secret to mention over the internet; emails seeking advice on whether to go to Chechnya, stating that he had previously "studied in Afghan," which was intended to convey that he had prior military jihad training. This reiteration of evidence was unnecessary, as Defendant's attendance at a training camp was sufficiently established and corroborated at trial, and for purposes of this motion, the Court accepted as true. The Government would have been better served had it focused on: (1) the evidence supporting the contention that people who attend training camps also fire AK-47's and RPG's; and (2) legal precedent demonstrating that this sufficiently corroborates Benkahla's extrajudicial confession.

and RPG, there must have been evidence admitted at trial that tends to establish that those who attend training camps actually handle such weapons.

Unfortunately, the Government addresses this crucial inquiry by a single conclusion with an over-broad citation: "the training those individuals received from Lashar[sic]-e-Taiba included the firing of automatic weapons and rocket propelled grenades. (Kohlmann, Linden, Kwon); GX1D52, 7A4, and 7H3b." (Govt.'s Opp., 5).[4]  The Court will review and summarize this relevant evidence in this citation *seriatim.*

Mr. Evan F. Kohlman ("Kohlman") served as the Government's expert to provide background regarding jihad training and Lashkar-e-Taiba.  In light of Government's unhelpful citation to his testimony as "Kohlman," the Court was forced to review his testimony in its entirety.  (Trial Tr. Vol. I, 82-270).  In doing so, the Court found that the Government's expert testified that one *could* learn how to shoot an AK-47 if they attended a Lashkar-e-Taiba "university," but also that it was a "center of study of both philosophical and other aspects of jihad.  It wasn't just for militarily[sic] [training]. . ." (Trial Tr. Vol. I, 123, 228, Jan. 29, 2007).

---

[4]In this citation, the Court will construe "Kohlman, Linden, Kwon" as an intended citation referring to those person's trial testimony, despite the blatant lack of any reference to the transcript using volume or page number.

Agent Sarah W. Linden's ("Linden") served as the Government's witness to establish the background of the investigation that resulted in Defendant being called before the grand jury. (Trial Tr. Vol. I, II, 270-459, Jan. 29-30, 2007). After review of Linden's testimony, there appears to be no reference to AK-47s or RPGs at Lashkar-e-Taiba training camps or any statement establishing that those at Lashkar-e-Taiba training camps handle or fire AK-47s or RPGs.[5]

Finally, Yong Ki Kwon ("Kwon") served as a Government's witness as an acquaintance of Defendant's from the Dar al-Arqam Islamic Center.  Included in Kwon's testimony is another uncorroborated confession, albeit one that supports Santora's testimony in some manner.  Specifically, Kwon testified that Benkahla told him that he shot an RPG while at a camp in Pakistan.  (Trial Tr. Vol. III, 752).

To summarize, after a thorough review of this evidence as well as a general review of the entire record, in corroboration of Santora's testimony that Defendant admitted he shot an AK-47 and an RPG, there is (1) the fact that Defendant attended a training camp; (2) Kohlman's testimony that one could plausibly learn how to fire an AK-47 through Lashkar-e-Taiba; and

---

[5] If it has not already been made clear, the Court wishes to note its frustration with the Government's casual, slipshod pleading for post-trial motions.  It is the sincere hope of the Court that the Government was simply mistaken in citing Agent Linden's testimony in support of the contention that the training of those individuals who attend Lashkar-e-Taiba training camps includes the firing of automatic weapons and RPGs.

(3) Kwon's testimony of an additional uncorroborated confession that Defendant told him he fired an RPG.[6]

This evidence introduced by the Government falls short of the corroboration necessary to establish trustworthiness of Santora's testimony.  First, as to Kwon's testimony that Defendant told him that he shot an RPG, the Supreme Court has held on several occasions that one uncorroborated admission of the accused cannot corroborate another admission.  *United States v. Calderon*, 348 U.S. 160, 165 (1954); *Wong Sun*, 371 U.S. 471, 489-90 n.15 (1963).  The rationale is clear: the rule of *Opper* is that *independent corroborative evidence* is needed to establish trustworthiness.  Two entirely uncorroborated admissions, added together, do not raise their level of trustworthiness.

Second, the Government failed to introduce sufficient evidence that those that attend the Lashkar-e-Taiba camps handle and fire AK-47s and RPGs.  Upon a review of the record, the Court found only one equivocating statement that linked training camps to such weapons: that one *could* learn how to fire an AK-47 through Lashkar-e-Taiba.  (Trial Tr. Vol. I, 228).  This statement does not bridge the logical inferential leap the

---

[6] The Government also submits numerous photographs related to Al-Qaeda and conflict in Chechnya to support its contention that the AK-47 and RPG can always be found where there is a jihad training camp.  The Court declines to consider these pictures as they were intended only to set the background for the investigation, and do not depict Lashkar-e-Taiba camps.  For this reason, even if the Court did consider these photographs in its analysis, their value would be infinitesimal.

Government requests to submit to a jury: that since Defendant went to a training camp, the extrajudicial admission that he fired an AK-47 or RPG is declared sufficiently trustworthy.

The Court understands and appreciates that this finding reverses the jury's verdict as to Count 2.  At trial, the Government produced hours upon hours of testimony, photographs, and video discussing jihad, al-Qaeda, the events of September 11, 2001, the conflict in Chechnya, and Lashkar-e-Taiba to a lesser extent--all of which was intended to address the context of the investigation.  After being flooded with pictures of Osama bin-Laden and other al-Qaeda operatives handling and firing AK-47s, as well as videos of the paramilitary training that were viewed on the nightly news after the events of September 11, 2001, it is no surprise that the jury presumed as given that one's presence at a training camp necessitates the firing of such weapons.  Now, with the benefit of a transcript, the Court can conclude with certainty that there was insufficient evidence to establish such a conclusion, and thus, the jury's verdict cannot stand.

Had the Government introduced one piece of independent evidence, outside of his uncorroborated admission, direct or circumstantial, that Defendant actually fired an AK-47 or an RPG, this Court would be more likely to hold that trustworthiness is established.  For instance, in *United States v. Hall*, the Fourth Circuit found the evidence sufficient when a defendant's

otherwise uncorroborated admission provided that he handed a note to the teller when robbing a bank, and the teller later testified that she was handed a note during the robbery. *United States v. Hall*, 396 F.2d 841, 843 (4th Cir. 1968). This single, independent circumstance constituted sufficient corroboration. Here, no such independent, extrinsic proof exists.

Similarly, in *United States v. Stephens*, the Fourth Circuit reversed a district court's denial of a motion for judgment of acquittal for a lack of independent, extrinsic proof. 482 F.3d 669 (4th Cir. 2007). In *Stephens*, the defendant was arrested after he was seen running from an area where gunshots were fired. *Stephens*, 482 F.3d at 671. After his arrest, the defendant told federal agents that a local drug dealer named "Red" had threatened to kill him for non-payment on a quantity of cocaine, and that, in self-defense, he fired at Red's car, a white Mazda. *Id.* The defendant recanted this admission, and at trial, the two federal agents testified to these statements and also stated that they knew of a suspected drug dealer named Red who drove a white Mazda. *Id.* The jury convicted defendant of conspiracy to distribute cocaine and the use of a firearm in a drug trafficking crime. *Id.* at 670. Noting the "heavy burden" on a defendant when challenging the sufficiency of evidence, the Fourth Circuit reversed the conviction on the ground that it rested solely upon the defendant's uncorroborated admission. *Id.*

-12-

at 673.  Despite the established fact that the defendant was discharging his firearm late at night, the testimony of two officers regarding his admission, and their independent knowledge of a suspected drug dealer named "Red" who drove a white Mazda, the Fourth Circuit required extrinsic, independent evidence of defendant's involvement with drugs.  *Id.*  Absent such evidence to corroborate his extrajudicial admission, the jury's verdict convicting defendant of his drug involvement could not be sustained by the evidence.  *Id.*

The evidence in this case provides even less corroboration than in *Stephens*.  As in *Stephens*, the only evidence linking Defendant to the underlying criminal conduct is an uncorroborated statement and the equivocating testimony of a Government witness.  However, unlike *Stephens,* where the federal agents could personally testify to their independent knowledge to corroborate the circumstances in the defendant's admissions, the Government witnesses in this case cannot.

In sum, under *Opper, Wong Sun, Smith, and Calderon*, *Hall,* and *Stephens*, the Court must reject the Government's contention that Defendant's presence at a training camp somehow independently corroborates his specific actions while at that camp.  Without the necessary, independent proof, Defendant's conviction for lying to the grand jury about firing of an AK-47 or RPG must have come entirely from his uncorroborated

admissions, and therefore, based on insufficient evidence. Accordingly, the jury verdict against Defendant as to Count 2 cannot be sustained, and the Court will grant Defendant's motion for judgment of acquittal as to that count.

### B.  Whether Hearsay Evidence Unfairly Prejudiced Defendant

Next, Defendant moves this Court for a judgment of acquittal or, in the alternative, for a new trial on the grounds that the Government's attempts to inject prejudicial hearsay deprived him of a fair trial.  Defendant argues that Agent Kneisler's testimony--that Defendant told her that he told Hamdi that he had a dream about attending jihad training camps--unfairly prejudiced him before the jury.  The Court struck the testimony as hearsay, confusing, and in violation of *Crawford v. Washington*, 541 U.S. 36 (2005), and instructed the jury to disregard it.

In *Greer v. Miller*, the Supreme Court offered considerable guidance with respect to the introduction of inadmissible evidence and curative instructions.  Specifically, the Court stated:

> We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an <u>overwhelming probability</u> that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be <u>devastating</u> to the defendant.

483 U.S. 657, 766 n.8 (1987)(citations omitted).  It is in this light that the Court evaluates Defendant's claim of unfair prejudice.

After a thorough review of the record, the Court cannot find that Defendant was unfairly prejudiced.  Out of concerns for confusion, prejudice, and potential violations of *Crawford v. Washington*, 541 U.S. 36 (2004), the Court excluded the testimony and instructed the jury to disregard it in every instance that the prosecution improperly elicited a statement by Hamdi.[7]  Defendant fails to point to any reason why the jury would be unable to follow the instruction, nor can this Court find grounds for one.  Without doing so, there is far from an "overwhelming probability" that the jury was unable to follow the instruction.

Furthermore, this testimony surrounding Hamdi did not practically prejudice Defendant.  The Court's repeated, sustained objections and striking of testimony made clear that it was improper, and from an advocacy perspective, the Government's attempts to elicit this testimony did little to serve its credibility.  Additionally, even if the testimony had been

---

[7] The Court manifested its *Crawford* concerns regarding Defendant's statements in response to statements by Hamdi.  The Court viewed this as a back-handed attempt to inject Hamdi's statements into the trial record.  Whether such statements actually violated *Crawford* is not of concern in the instant motion since they were all excluded from the record, and the curative instruction sufficed to remedy any confusion.

permitted, it hardly rises to the level of being "devastating" to the Defendant, as its probative value was severely limited.[8]

In light of these two conclusions, the Court cannot find that Defendant was unfairly prejudiced at trial.  The evidence was sufficient against Mr. Benkahla to all remaining counts, and the interests of justice do not require a new trial.  Accordingly, his motion for judgment of acquittal and motion for new trial on this ground will be denied.[9]

### IV. Conclusion

For the foregoing reasons, Defendant's motion for judgment of acquittal will be granted in part and denied in part. In addition, Defendant's motion for a new trial will be denied.

An appropriate Order will issue.


July 24, 2007                        _____/s/_____
Alexandria, Virginia                          James C. Cacheris
                                     UNITED STATES DISTRICT COURT JUDGE

---

[8] For this reason, the Court still cannot understand the Government's adamance in pursuing this line of questioning.  The Government already introduced more than sufficient evidence to secure a finding of Defendant's attendance at a training camp, and the jury likely would have been confused by the case agent's testimony of Defendant's statements to the case agent about Defendant's statements to Hamdi.

[9] After the Court's grant of Defendant's motion for judgment of acquittal as to Count 2, but before this opinion was published, Defendant moved this Court to reconsider its decision and to extend its ruling to Counts 1 and 3 on the grounds that Defendant's attendance at a training camp was also not corroborated.  However, as stated *supra*, the Government clearly established Defendant's attendance at a training camp in Pakistan at trial, and this basis alone is sufficient for the conviction on Counts I and III.  Accordingly, Defendant's motion to reconsider will be denied.